# UNITED STATES DISTRICT COURT

for the

Eastern District of Tennessee

| United States of America | ) | |
| v. | ) | Case No. |
| Richard Harper | ) | 2:20-MJ- 14 |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |

**FILED**

JAN 2 2 2020

Clerk, U. S. District Court
Eastern District of Tennessee
At Greeneville

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___March 30, 2017, to the present___ in the county of ___Sullivan and Greene___ in the

___Eastern___ District of ___Tennessee___ , the defendant(s) violated:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. § 38(a) | Fraud and attempted fraud involving an aircraft |
| 18 U.S.C. §§ 1343 and 1349 | Attempted wire fraud |
| 18 U.S.C. § 1956(a)(2) | Attempted international money laundering |
| 18 U.S.C. § 1028A | Aggravated identity theft |

This criminal complaint is based on these facts:

See attached affidavit.

❏ Continued on the attached sheet.

_____
*Complainant's signature*

Travis R. Wiley, U.S. DOT OIG
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __1/22/2020__

_____
*Judge's signature*

City and state: ___Greeneville, Tennessee___

Cynthia R. Wyrick, U.S. Magistrate Judge
*Printed name and title*



## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

FILED

JAN 2 2 2020

Clerk, U. S. District Court
Eastern District of Tennessee
At Greeneville

I, Travis Wiley, the undersigned affiant state the following:

## A. AFFIANT BACKGROUND AND EXPERIENCE

1. I am a Special Agent with the United States Department of Transportation – Office of Inspector General ("DOT/OIG"), and have been since January 2017. I am a law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, that is, an officer of the United States empowered by law to conduct investigations of and make arrests for violations of federal law. I am also a "Federal Law Enforcement Officer" within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure.

2. As a DOT/OIG special agent, I am authorized to investigate possible violations of criminal laws of the United States, including those laws contained in Titles 15 and 18 of the United States Code, and to execute search and arrest warrants. During my employment with DOT/OIG, I have conducted numerous white collar criminal investigations, and have participated in the execution of several search warrants. I am a graduate of Maryville College, and have a Master's Degree in Public Administration from the University of West Georgia. Additionally, I completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center.

3. I make this affidavit based on my own personal knowledge, my review of documents I have obtained during the course of the investigation, or based upon other information provided to me from other law enforcement agents working on the

1

investigation with me.  Unless otherwise noted, descriptions of conversations with witnesses are paraphrased.

4. I make this affidavit for the limited purpose of establishing probable cause in support of a complaint seeking an arrest warrant for the subject offenses described below. Consequently, I have not included all facts from the investigation, but only those facts that I believe are necessary to establish probable cause for the issuance of the requested warrant.

## B. OVERVIEW OF SUBJECT OFFENSES

I submit this affidavit in support of a criminal complaint for the following offenses.  I know from my training and experience as well as my conversations with other knowledgeable investigators and prosecutors that the following offenses are criminal violations of the laws of the United States:

1. 18 U.S.C. § 38(a) prohibits fraud involving an aircraft.  The statute prohibits falsifying or concealing material facts about an aircraft; making fraudulent representations about an aircraft; making or using any materially false writing, entry, certification, document, record, data plate, label, or electronic communication regarding an aircraft; or attempting to do any of these things.

2. 18 U.S.C. §§ 1343 and 1349 prohibit attempted wire fraud.  Section 1343 prohibits devising a scheme to obtain money or property by false or fraudulent pretenses, representations, or promises and transmitting anything by interstate or foreign wire

2

transmissions to carry it out. Section 1349 makes an attempt to commit wire fraud an offense.

3. 18 U.S.C. § 1956(a)(2) prohibits attempted international money laundering. The statute makes it unlawful to attempt to transmit or transport funds from a place within the United States to a place outside the United States with intent to promote the carrying on of certain offenses (including wire fraud) or with the intent to conceal or disguise proceeds of certain offenses (including wire fraud).

4. 18 U.S.C. § 1028A prohibits aggravated identity theft. That statute makes it unlawful to possess or use a means of identification of another person without lawful authority during and in relation to certain offenses (including attempted wire fraud).

Throughout this affidavit, I reference these offenses as the "target offenses."

## C. INVESTIGATIVE SUMMARY

Following a long-term historical and undercover investigation, the facts outlined below show that Richard Harper ("Harper"), the owner and operator of Apple International, Inc. ("Apple"), a helicopter sales and repair facility with offices in Bristol, TN, coordinated the fraudulent combination of the fuselage from one damaged helicopter with serial number ("S/N") 4421 with the nose and tail from another damaged helicopter with S/N 4227. When doing so, Harper switched or caused the switching of the data plate from the damaged helicopter with S/N 4227 to the fuselage from the damaged helicopter with S/N 4421, leaving the appearance of one helicopter with S/N 4227. Harper then misrepresented or caused the misrepresentation of the

3

resulting helicopter as one historic machine in violation of applicable federal law and Federal Aviation Administration ("FAA") regulations.

Harper attempted to sell the fraudulently altered helicopter to a fictitious client of a broker who, in reality, was an undercover agent of the U.S. Department of Homeland Security - Homeland Security Investigations (HSI). Among other things, when attempting to coordinate the fraudulent sale, Harper sent or caused to be sent by wire communication to the undercover agent, a fraudulently obtained airworthiness certificate and documentation that misrepresented material facts such as the true age and actual hours of service of the aircraft. Harper also used, without lawful authority, the names and FAA-issued mechanic's licenses of two licensed mechanics to provide the impression that work on the fraudulent helicopter had been certified and inspected by them when, in fact, they had not. In connection with the attempted sale, Harper solicited the wire transfer of proceeds from the fraudulent sale to a bank account he controlled in a financial institution located in the United Kingdom.

This facts are more fully set out below and provide probable cause for the issuance of an arrest warrant for the target offenses.

**D. PROBABLE CAUSE**

1. The Federal Aviation Administration ("FAA") is an agency of the United States Department of Transportation. On November 16, 2018, the FAA, Nashville, TN Flight Standards District Office ("FSDO") received a complaint from a former employee of Apple alleging that a data plate was taken off of one Bell 206 BIII helicopter and affixed to a different helicopter, in violation of 14 C.F.R. § 45.13(e). This action caused the misidentification of the aircraft. Aircraft data plates contain all vital information about an aircraft. Typically made of metal, aircraft data plates are etched with registration information such as date of manufacture,

4

model number, serial number, and registration number. Following the initial complaint, on

November 29, 2018, FAA received an anonymous letter from another former Apple employee

alleging the same issue with data plate fraud.  Apple, an FAA certificated part 145 repair station,

is located in Bristol, Tennessee, and owned by Richard Harper, a citizen of England.

2.     On January 31, 2019, SA Ryan Fletcher and I, both with the U.S. Department of

Transportation – Office of Inspector General ("DOT/OIG"), interviewed Kay McElroy, Apple's

former Office Manager, regarding a helicopter data plate swap between helicopters with S/N

4227 and S/N 4421. McElroy had retained emails from her employment with Apple and

provided copies of emails sent directly to her or on which she was copied regarding the S/N 4227

aircraft. I reviewed McElroy's emails and learned the information in paragraphs 3 to 9, below.

### Richard Harper Purchases a Bell 206 BIII JetRanger S/N 4227

3.     On or around March 30, 2017, Harper purchased a damaged Bell 206 BIII

JetRanger helicopter with S/N 4227 from Heli-Go, an Australian company, for $165,000. The

helicopter with S/N 4227 had suffered major damage to the airframe during transit and was

deemed uneconomical to repair by the insurers. On or around April 10, 2017, Apple applied for a

registration number with the FAA. On April 14, 2017, the helicopter with S/N 4227 was assigned

registration number N817QA. From April 2017, to on or around May 2017, Harper attempted to

sell the helicopter with S/N 4227 "as is."  On May 17, 2017, Harper and Micheal Eglington, an

Apple employee in England, discussed the delivery of the helicopter with S/N 4227 to the Apple

hangar in Bristol, TN.  As of May 24, 2017, Harper was still attempting to sell the helicopter "as

is" and told Tanya Elthorp, a potential buyer, that N817QA (helicopter with S/N 4227) was still

owned by Apple and was for sale for $335,000.

5

4.     On or around June 19, 2017, Harper entered into an agreement to sell the helicopter with S/N 4227 to Al Muhahidun Agro Resources and Development, Inc. in the Philippines.  This company is owned or has association with Esmael "Toto" Mangudadatu – a Governor of the Philippines.  The price was to be agreed upon along the way, once repairs were completed.  The parties agreed that payments of $100,000 per month would be made in stages as the work progressed.

5.     On June 28, 2017, an email discussion occurred between Harper and Mike Rancourt, President of M.R. Airframe Ltd in Canada, about different airframes.  The issue of data plate switching was discussed.  Harper stated his chief mechanic, Kevin Ralph, had concerns with keeping the original S/N if the airframes were changed. On or around June 29, 2017, Michael Eglington conducted research and found an FAA case involving data plates/changing serial numbers and provided a hyperlink to Harper about the case - FAA v. TRE Aviation Corporation.  Eglington suggested it may be allowable in Canada, but it was not permissible in the United States.  On June 29, 2017, in response to Eglington, Harper suggested his case would be different than the TRE Aviation case by writing, "I think what I am planning is quite different, we are changing the airframe as a part number (same as you would a tail boom for example) and 'rebuilding' S/N 4227 with all of its components and parts."  Further, Harper wrote, "I am sure I could win a test case on this if it came to it, but can we afford to take on the FAA?"  In response, Eglington suggested Harper have an informal chat with an FAA Designated Airworthiness Representative (DAR) about the legality of the airframe data plate switch and advised against taking the FAA to court on the matter.  In response, Harper agreed that taking the FAA to court would be foolish and wrote, "We have an English guy I know coming over here Monday, he has a Bell Approved Jig, he is going to estimate repairs, but I feel like I want to put

6

my views to the FAA to see whether they agree and give us the authority to change airframe, that opens up our options" and added, "Don't anybody reveal the doubts about changing an airframe to Paul Gratton (the English guy) that makes his hand stronger and a license to print money."

## Gratton Visits Apple and Provides Estimate for Repair of Helicopter

6.     On July 4, 2017, Harper discussed the repair of the helicopter with S/N 4227 with Paul Gratton, Owner of U.K Aero, Inc. ("U.K. Aero"), an FAA Certificated Helicopter Repair Station in Murfreesboro, TN. Harper asked about the main part Gratton was going to acquire from Paul Reid at Rotor Mate, and asked if that is included with the $25,000 quote. In return, Gratton stated he did not want to discuss the specifics of the repair by email due to a government issue he was fighting. Further, on July 4, 2017, Gratton wrote to Kay McElroy by email that he did not want to do the project and would not put his repair station in jeopardy. Gratton stated he did not want to discuss the matter by email because he had learned too much about government surveillance.

7.     On July 17, 2017, Harper emailed Glen Mathison, Director – AeroStructures in Australia, stating, "After long discussions with the FAA and Bell Helicopters they will not authorise changing the airframe on S/N 4227. The FAR's state you cannot remove the Data Plate." On or around July 17, 2017, Harper told Mathison for logistical purposes he was giving the repair job to an airframe shop in Tennessee – U.K. Aero.

8.     On July 26, 2017, Harper emailed the buyers in the Philippines. Harper stated that $100,000 would be payable at the end of each month (from 31st August, 2017) for the next two to three months until the helicopter was finished. Further, Harper told the buyers he would apply for an Export Certificate of Airworthiness from the FAA after complying with all requirements from the Philippines CAAP. As of August 25, 2017, Apple invoiced Muhahidun

Agro Resources and Development for $300,000 toward the repair of the helicopter with S/N 4227.

9.     On or around August 2017, Apple shipped the original helicopter with S/N 4227 to Gratton at U.K. Aero in Murfreesboro, TN for airframe repairs.  At or around the same time, Gratton purchased a Bell 206B helicopter with S/N 4421 from Paul Reid, a helicopter parts broker in Royse City, TX. The helicopter with S/N 4421 had previously been destroyed in an accident on February 6, 2016, in Lindon, NJ.

**Anonymous Letter Sent to Nashville FAA Office**

10.     On December 12, 2018, I interviewed Gary Anderson, General Manager and Director of Maintenance – Apple, regarding the data plate swapping allegation. Anderson advised he was approached by Jason Sizemore, Apple Chief Inspector, around November 2018 regarding the data plates.  Sizemore had suspicions the plates had been changed, and according to Anderson, Sizemore thought it occurred on or around September 2017 when the helicopter with S/N 4227 was sent to U.K. Aero for airframe repair.

11.     On November 6, 2018, Anderson emailed Harper, owner of Apple, about the data plate suspicions, as well as issues he was encountering exporting the helicopter with S/N 4227. Anderson advised he was attempting to export the helicopter to the buyer in the Philippines.  In the email to Harper, Anderson stated it was becoming difficult to get the proper documentation and inspection to obtain an FAA airworthiness certificate for the helicopter with S/N 4227. Further, Anderson discussed the consequences of having a special FAA team review the aircraft considering allegations the data plates may have been switched on the aircraft.  Anderson said this would be "highly illegal" and he did not want to jeopardize anyone's freedom for the

8

aircraft. In a response on November 6, 2018, Harper said that nobody changed the data plate and the airframe was repaired with used panels from another helicopter.

12.     Also on December 12, 2018, I interviewed Jason Sizemore, Chief Inspector – Apple. I told Sizemore that an aircraft data plate change between helicopters with S/N 4227 and S/N 4421 appeared likely based on the documentation and helicopters reviewed. In response to the allegation, Sizemore stated he started work at Apple at or around July 2018. Sizemore stated he was very suspicious that the data plate from S/N 4227 had been removed and placed on a new airframe.

13.     I showed Sizemore a picture of a helicopter with S/N 4421 on its side after being involved in an accident in Lindon, NJ. Sizemore pointed to the paint scheme and stated the helicopter's paint scheme looked very familiar. Further, Sizemore stated the paint scheme on the accident aircraft (helicopter with S/N 4421) was the same paint scheme (at least on the lower half) on the helicopter that was returned to Apple after the U.K. Aero repair. Sizemore showed me a picture on his phone of the returned helicopter with S/N 4227 from U.K. Aero. The picture showed the fuselage had the same orange paint stripe as the helicopter with S/N 4421 that was involved in the accident in Lindon, NJ. In comparison, before it was sent to U.K. Aero the original helicopter with S/N 4227 was a black, grey, silver, and red painted aircraft.

**Fuselage of Original S/N 4227 Photographed Behind Apple Hangar**

14.     While on-site at Apple on December 12, 2018, I personally observed and took photographs of a Bell 206B helicopter fuselage located behind the Apple hanger. It had the identical paint scheme of the helicopter with S/N 4227 when the helicopter was first advertised for sale by Harper on or around April 2017. The fuselage had major damage to the underbelly and the skins on the right hand side. In addition, the fuselage was missing all three data plates.

9

15. On January 31, 2019, SAs Travis Wiley and Ryan Fletcher interviewed Jared Hale, former Chief Inspector– Apple, regarding a data plate swap between helicopters with S/N's 4227 and 4421. Hale provided the information in this paragraph and paragraphs 16 to 18, below. According to Hale, after the helicopter with S/N 4227 was sold to Esmael "Toto" Mangudadatu, Harper sent the helicopter with S/N 4227 to Paul Gratton at U.K. Aero for airframe repairs. Hale was involved in the delivery of the helicopter with S/N 4227 to Gratton. Hale stated he prepped the helicopter, and he was present when a towing company came to Apple to pick up the helicopter with S/N 4227 for shipment to Gratton in Murfreesboro, TN. Hale advised he went to U.K. Aero three times during the summer of 2017. Hale stated the first two times he visited U.K. Aero he assisted in disassembling the helicopter with S/N 4227. On the third visit, Hale stated he performed some work on the helicopter's electrical wiring. Hale stated he pulled some lighting boxes and other equipment. Hale advised he was let go from Apple around January 2018.

16. Hale reported Gratton had two or three other contract employees assisting him at his shop, but he could not recall their names. According to Hale, Gratton was contracted to repair the body of the helicopter. Hale stated the repair of the helicopter with S/N 4227 would have required new sheet metal, and the honeycomb and landing gear would need substantial repair. Hale stated Harper initially discussed the idea of taking the front end of the helicopter with S/N 4227 and attaching it to a different airframe. Hale advised he had heard transferring the nose of the helicopter was okay, but was later told by a technical representative at Bell Helicopters, Inc. that it was not allowed. Hale stated Kay McElroy, former Apple office manager, was present during this conversation but he could not recall the name of the Bell

10

technical representative. McElroy later advised Apple's technical contact at Bell Helicopters was Eric Sharp.

17.     After the helicopter with S/N 4227 was returned to Apple, Hale noted the front end had the same paint scheme as when it was delivered to U.K. Aero; however, the fuselage was now a yellow primer color. Hale recalled a meeting between Gratton, McElroy, and Harper (by phone) during which the data plates were discussed.

18.     Hale reviewed the work order package for the helicopter with S/N 4227 from UK Aero. The work order, from Hale's vantage point, looked like repairs that would need to occur if they were to repair the original helicopter with S/N 4227. Hale noted one exception, though. He did not see a repair to the honeycomb section of the belly which he knew was badly damaged. However, most of the repairs did not occur because the fuselage of another aircraft was used instead. Hale noted the airframe repairs to the helicopter with S/N 4227 would have been very expensive, and it was most likely less expensive and faster to fuse the two helicopters together and just use the identity of one.

19.     On January 22, 2019, I received an email from Scott James, Frontline Manager Airworthiness, FAA Flight Standards District Office (FSDO) Nashville, TN, regarding photographs for the helicopters with serial numbers 4227 and 4421. According to James, these photographs represented the evolution of the helicopter with S/N 4227 from its original form until it took the airframe of S/N 4421, but the data plates of S/N 4227.

20.     James stated the photographs were offered to Aaron DeVogul, FAA Aviation Safety Inspector (ASI), by Jason Sizemore during a recent inspection of Apple. The photographs were put into a power point presentation with 15 slides and were of the original helicopter with S/N 4227 being repaired at U.K. Aero. Slides 5 to 14 depicted how the nose section was removed

11

off the helicopter with S/N 4227 and then installed on the fuselage of the helicopter with S/N 4421. I have reviewed slide 12. It depicts a fuselage with an orange stripe. The orange stripe appears the same as a photo of the helicopter with S/N 4421 (slide 6) that was taken of that helicopter before it crashed in Lindon, NJ in February 2016.

21.     The photographs were reportedly taken off the Apple share drive. In slide 14, the data plate of the helicopter with S/N 4421 can be seen temporarily installed on the fuselage of the previous helicopter with S/N 4227.

22.     From on or about February 2019 through May 2019, Harper attempted to have Jason Sizemore sign off on the export airworthiness application for the helicopter with S/N 4227; however, when Sizemore declined, he was fired. An export certificate of airworthiness shows that an aircraft meets a specific airworthiness standard before being exported to a foreign country. My investigation has not revealed what happened to the contemplated sale of the helicopter with S/N 4227 to Toto Mangudadatu, but it appears that sale was terminated based upon the facts described below.

### S/N 4227 Shipped to Southern Rotorcraft in Texas

23.     On August 14, 2019, I received a telephone call from Gary Anderson, former General Manager and Director of Maintenance – Apple. Anderson stated he was on-site at Apple and the helicopter with S/N 4227 (now including the fuselage of the helicopter with S/N 4421) was at the facility. Anderson learned Harper planned to ship the helicopter with S/N 4227 to Southern Rotor Craft in Royse City, Texas. Anderson was told by employees at Apple that Harper was going into business with Southern Rotor Craft and would use them to inspect the aircraft and issue an airworthiness certificate for the helicopter with S/N 4227.

12

24.     Anderson noted he was concerned Southern Rotorcraft would not know about the data plate change or the existence of the original history of the helicopter with S/N 4421 and would unknowingly sign off on the now fraudulent aircraft with switched data plates.

25.     On August 20, 2019, I received a telephone call from Jesus Ochoa, a former Sales Representative of Apple, in Bristol, TN. First, Ochoa stated the Bell Jet Ranger with S/N 4227 at Apple was actually the fuselage of another Bell Jet Ranger with S/N 4421. He advised before he left he learned the helicopter with S/N 4227 was being shipped to Southern Rotorcraft in Royce City, Texas. Ochoa was concerned about this because he knew the owners of the facility, Sally (LNU) and Reg (LNU), and did not want them implicated in any wrong doing by Harper. Ochoa believed Harper was using Southern Rotorcraft to inspect the aircraft and sign off on the airworthiness document, but would not tell them about the data plate swap.

26.     On or about August 15, 2019, the Bell JetRanger with S/N 4227 was listed for sale by Apple on an online sales site located at the following internet address: https://www.avbuyer.com/aircraft/helicopter/turbine/bell-helicopters/206b-iii/356446 for $695,000. The telephone number to contact for additional information was 423-652-0206. This is the telephone number listed on Apple's website (appleheli.com) as the Bristol, Tennessee contact information.

27.     On August 23, 2019, Gary Anderson texted me and advised Leon Fillies a foreign worker, employed by Apple, was living in the Apple aircraft hangar at 367 Industrial Dr. Bristol, TN 37620.

28.     On September 7, 2019, Johannes Hartman, former Apple employee, and cooperating source working for Southern Rotorcraft texted me with pictures of the helicopter with S/N 4227 arriving in Royse City, TX by flatbed trailer.

13

**The Attempted Sale by Harper of the Fraudulent Helicopter with S/N 4227**

29.     On or about October 1, 2019, in coordination with SA John Witsell, U.S. Department of Homeland Security - Homeland Security Investigations (HSI), we initiated an undercover operation to attempt to purchase the helicopter with S/N 4227 that Apple was listing for sale.

30.     On October 17, 2019, an undercover agent (UC Agent) spoke by telephone with Leon Fillies, an Apple International Inc. sales representative living in Bristol, TN regarding the purchase of a Bell 206 BIII JetRanger with S/N 4227. The UC agent initially called 423-652-0206, the number listed on the AvBuyer sales listing, but was advised by Fillies to call him back at 423-366-4019.  In response to the telephone call Fillies sent the UC agent an email with attachments consisting of detail sheets for a helicopter with S/N 4227 – Bell 206 BIII Jet Ranger and a helicopter with S/N 51485 a Bell LongRanger, which were both advertised for sale. Fillies' signature line on the email to the UC agent has 423-366-4019 listed as the cell phone number. In addition, Fillies noted the MD and CEO copied on the email could address any additional questions on the aircraft. The copied email address was that of Richard Harper (richard@appleheli.com).

31.     On October 21, 2019, the UC agent responded by email to Fillies and copied Harper. The UC Agent stated his client was interested in the Bell 206 Jet Ranger and asked to review several documents including the following: 100 Hour Inspection, Annual Inspection and Sign-off, Certificate of Airworthiness, Logbooks, and -Supplemental Type Certificates (STC's) which are issued when an applicant has received FAA approval to modify an aircraft from its original design.

32.     On October 22, 2019, Richard Harper responded by email and stated, "Thank you for your inquiry and emails to Leon in our Bristol, TN office." Harper stated the helicopter was in the final stage of a full and extensive refurbishment and was currently with a maintenance partner company – Southern Rotorcraft in Royse City, TX. In addition, he stated the inspections previously inquired about were in the process of being completed. Harper noted in the email the helicopter had been previously damaged in transit and repaired at an FAA repair station. Harper did not advise the UC Agent that the fuselage of the helicopter was actually the fuselage of the helicopter with S/N 4421 and that data plates had been switched.

33.     On October 29, 2019, Harper emailed a purchase agreement to the UC agent for the Bell helicopter with S/N 4227. Harper asked the buyer to sign the agreement and provide a 10% deposit ($56,500) to a Barclay's bank account in the United Kingdom. Harper is designated as the seller of the aircraft.

34.     From approximately November 1, 2019, through December 2, 2019, emails were exchanged between the UC agent, Harper, and Max Harrison, "PA to MD" and HR Manager for Apple in the United Kingdom. These emails discussed the status of the inspections, arranging an on-site inspection of the helicopter, and signing the purchase agreement.

**Airworthiness Inspection**

35.     On November 15, 2019, I received an email from Scott James, FAA Nashville, TN regarding an entry into the FAA Designee Management System (DMS) involving the helicopter with FAA registration number N817QA and S/N 4227. Federal law authorizes the FAA to delegate to a qualified individual or organization the ability to conduct certain activities on behalf of the agency. The DMS is a web-based tool designed to standardize the management of designees, and tracks and records their activities. In this case, on November 8, 2019, Charles

Daniel, an FAA Designated Airworthiness Representative – Technical (DAR-T) requested to conduct an airworthiness inspection on a Bell 206 helicopter with S/N 4227. The airworthiness inspection was completed on or around November 20, 2019.

36. On November 25, 2019, I received an email from James with supporting inspection documents used to certify the airworthiness of the helicopter with S/N 4227. James reviewed the documents taking into account that the fuselage of the helicopter with S/N 4421 was used in the repair of the helicopter with S/N 4227, and the helicopter with S/N 4227's data plates were then affixed to the fuselage of the helicopter with S/N 4421 (now attached to the nose and tail of the helicopter with S/N 4227). He advised that the supporting documents now included the following false statements: year of manufacture, aircraft serial number, total airframe hours, supplemental type certificates, airworthiness certificate, and logbook records.

37. On December 4, 2019, the UC agent emailed Harrison and cc'd the Apple team stating the buyer had authorized him to pay a $45,000 deposit and have his pilots conduct the necessary on-site inspection of the aircraft.

38. On December 5, 2019, Harper responded directly to the UC agent. He accepted the $45,000 purchase agreement amount. Further, he attached a new spec sheet. Harper stated "the main rotor blades have over 3,200 hours remaining where we had listed them at only 2,317 hours remaining." Harper also noted the annual and all of the inspections had been completed and signed off. Harper requested the UC agent to wire transfer $45,000 to a Barclay's bank account located at 45 Market Place Wymondham Norfolk NR18 OAL United Kingdom.

39. On December 11, 2019, the UC agent asked whether Harper would be available for a phone call on December 13, 2019, to discuss the down payment and address any questions his attorneys may have about the purchase agreement. Harper agreed, and on December 13,

16

2019, in Greeneville, TN a phone call was placed by the UC agent to Harper. As a result of the call, Harper agreed to arrange for copies of the books, records, and certificate of airworthiness to be emailed to the UC agent. Harper stated he hoped to have the helicopter sale completed by year end.

40.    On December 13, 2019, Harper emailed Reg Denysschen and Sally with Southern Rotorcraft and instructed them to send the prospective buyer (the UC agent) copies of the latest airframe and engine books, plus copy of inspection, certificate of airworthiness, AD listing, and other documents.

41.    On December 14, 2019, the UC agent emailed Harper and told him the buyer would not allow the down payment until the attorneys review the documents.

42.    On December 15, 2019, Reg Denysschen emailed 7 documents to the UC agent including: (1) N817QA (the FAA registration number for the helicopter with (S/N 4227) service bulletins (SB's) and airworthiness directives (AD's); (2) certificate of airworthiness; (3) engine commercial engine bulletins (CEB's) and AD's; (4) log entries and work done; (5) status report; (6) supplemental type certificate (STC) list; and (7) weight and balance equipment. The log entries included entries that gave the appearance that work had been completed by licensed FAA mechanics Gary Anderson and Joshua Sizemore.

43.    On January 2, 2020, I interviewed Gary Anderson regarding the inspection documents obtained by the UC buyer. First, I showed Anderson a packet of information titled "Bell 206B3 S/N 4227 Summary of Work Performed." Anderson recognized the document, and stated he was the person who typed the information on pages 4 to 9. Anderson stated this was a normal business practice when he worked at Apple. Anderson pointed to the words in red ink and advised these numbers, dates, etc. were in red ink because they were placeholders and the

17

document was incomplete. He noted the numbers in red were what they knew about the helicopter when it was first purchased, from the history of the helicopters associated logs and paperwork.

44.     On pages 6 to 9 of the above-referenced Bell 206B3 S/N 4227 summary of work document there are 138 items listed for the aircraft and 17 items for the engine. This listing includes, among other things, inspections and other repairs performed on the helicopter with S/N 4227. On page 9 of the document there is a certification statement that the aircraft has been inspected in accordance with the manuals above and is in an airworthy condition. Following that statement is Jason Sizemore's name and FAA Airframe and Powerplant (A&P) license number (3779386). Also, on page 9 is a statement the aircraft has had an annual inspection performed using 14 CFR Part 43 D and BHT-206A/B Series-MM as references and the aircraft is in airworthy condition. Following the statement is Gary Anderson's name and FAA A&P license number (38691701A).

45.     Anderson stated the document was a working document and was not ready to be used formally. He stated in the normal course of business he would sign his signature by his typed name and A&P number on page 9.  He noted this document is used to track and summarize everything that has been done to the helicopter. Anderson stated he thought he deleted the document when he left the company, but he couldn't recall for sure. He stated the document was kept on a shared drive on the company's intranet. Anderson also noted in the log pages that were completed for other helicopters he would put the summary information on repair station forms, sign the document, and then place it in a packet that would stay with the log books. He said the completed packet would not have any red ink. Anderson also advised it was unusual to stop at the ground runs for the helicopter as shown on page 9. He stated to receive the airworthiness

18

certificate there should be a record of a flight test, but in this case there was not. Anderson did not authorize Harper or anyone else to use his name and his unique A&P license number to represent or provide the impression that he had done the items listed in the log book. On the contrary, Anderson had objected to signing off on the airworthiness of the helicopter based on the data plate switch.

46.     Also, on January 2, 2020, I interviewed Jason Sizemore. Sizemore recognized the documents, and stated it was a working copy used to track and summarize work performed on the aircraft. Sizemore stated he did not sign off on the airworthiness of the aircraft with S/N 4227. Sizemore advised the red ink portions of the document with aircraft hours, dates, etc. were taken from paperwork that came with the aircraft, but were only placeholders and had not been finalized. Sizemore did not authorize Harper or anyone else to use his name and his unique A&P license number to represent or provide the impression that he had done the items listed in the log book. On the contrary, Sizemore had objected to signing off on the airworthiness of the helicopter based on the data plate switch.

47.     Next, Sizemore advised the original fuselage of the helicopter with S/N 4227 was still behind the hanger with missing data plates when he was laid off in May 2019. Further, Sizemore stated he and Donnie Cloyd, a former paint employee with Apple, were at Apple when the truck carrying both the fuselage of the helicopter with S/N 4227 and a second fuselage were delivered upon repair at U.K. Aero. Sizemore advised this occurred a few months after he started with Apple which was on or around July 2017. Sizemore was shown pictures of the two fuselages and confirmed the identity of what became the helicopter N817QA S/N 4227 and a second stripped down fuselage taken off the truck. Sizemore noted the stripped fuselage did not have any data plates on it. Further, he did not see data plates for the helicopter with S/N 4421.

48. The above events and actions demonstrate Harper attempted to sell the fraudulent helicopter with switched data plates. As a result of the switch, a potential buyer would not be aware of the previous accident or history to the fuselage of the helicopter with S/N 4421 or the unlawful data plate switch.

49. Based on the above facts, I have probable cause to believe that Harper has committed the target offenses outlined above.

Respectfully submitted, this 22 day of January, 2020.

Travis R. Wiley
Special Agent, U.S. Dept. of Transportation
Office of Inspector General

Sworn to before me and signed in my presence.

Date: 1-22-2020

Cynthia Richardson Wyrick
UNITED STATES MAGISTRATE JUDGE